UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FANJUN CONG,<br>      Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security, et al.,<br><br>      Respondents. | Case No.: 25-cv-3730-GPC-DEB<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

On December 22, 2025, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Respondents filed a return to the petition on January 2, 2026, ECF No. 5, and Petitioner filed a traverse on January 6, 2026, ECF No. 6. For the following reasons, the Court GRANTS in part the petition for writ of habeas corpus. The hearing previously scheduled for January 16, 2026, is hereby vacated.

## BACKGROUND

Petitioner is a 21-year-old citizen of China. ECF No. 1, ¶¶ 11, 16. Petitioner has lived in San Diego with his parents for nine years. *Id.* ¶ 16. Prior to his detention, Petitioner was a student at San Diego College. *Id.*

  Petitioner came to the United States with his mother in 2017 on a B2 Visa. *Id.* ¶ 17. Petitioner's mother applied for asylum in the United States after she was persecuted under China's family planning policy. *Id.* As a result, Petitioner became a derivative asylum applicant under his mother's case. *Id.* Neither Petitioner nor his mother have received final determinations on their asylum applications. *Id.*

  On May 6, 2025, Petitioner inadvertently crossed the border into Mexico due to a navigation error while driving. *Id.* ¶ 18. Upon turning around and attempting to re-enter the United States, border patrol agents arrested Petitioner and placed him into expedited removal proceedings under 8 U.S.C. § 1225(b). *Id.* Petitioner was transferred to Otay Mesa Detention Center, where he remains today. *Id.*

  Upon apprehension, Petitioner expressed a fear of return. *Id.* ¶ 1. Respondents provided Petitioner with a credible fear interview but found no credible fear. *Id.* An immigration judge affirmed Respondents' credible fear determination. ECF No. 5-1, ¶ 7.

  Petitioner has now been detained under 8 U.S.C. 1225(b)(1) at Otay Mesa Detention Center for just over eight months. ECF No. 5, at 2. He has received no custody determination by a neutral decisionmaker. Petitioner now alleges that his prolonged detention violates the Due Process Clause of the Fifth Amendment of the Constitution and the Immigration and Nationality Act. ECF No. 1, ¶¶ 22-25.

## LEGAL STANDARD

  Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement).

A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## DISCUSSION

### I.     Jurisdiction

Petitioner invokes this Court's jurisdiction pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the federal habeas provision, 28 U.S.C. § 2241. ECF No. 1, ¶¶4-5. Respondents argue that this Court lacks jurisdiction to hear Petitioner's claims under 8 U.S.C. § 1252(a)(2)(A), 1252(e), and 1252(g). ECF No. 5, at 2-6. The Court disagrees.

**A. Section 1252(a)(2)(A) and (e) – Expedited Removal**

Sections 152(a)(2)(A) and (e) specifically apply to the expedited removal process outlined in 8 U.S.C. § 1225.

Section 1252(a)(2)(A) asserts that "no court shall have jurisdiction to review" (1) "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an [expedited removal] order"; (2) "a decision by the Attorney General to invoke" the expedited removal statute; (3) "the application of [§ 1225(b)(1)] to individual aliens, including the [credible fear] determination made under [§] 1225(b)(1)(B)"; and (4) the "procedures and policies adopted by the Attorney General to implement the provisions of [§ 1225(b)(1)]." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iii) & (iv).

Section 1252(e) reiterates that no court may "enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)," 8 U.S.C. § 1252(e)(1). However, the section allows for narrow habeas corpus challenges addressing (1) whether the petitioner is an alien, (2) whether the petitioner was ordered removed, and (3) whether petitioner is lawfully admitted for permanent residence. *Id.* § 1252(e)(2)(A)-(C). Section 1252(e)(3) also allows for challenges to the constitutional validity of the system.

Based on these provisions, Respondents argue that Petitioner's claim falls outside the limited habeas corpus authority provided under § 1252(e)(2). However, Petitioner does not challenge the discretionary decision to place him in expedited proceedings or the implementation of proceedings thereafter. Rather than questioning the exercise of discretion in selecting the expedited removal process, Petitioner is challenging the constitutionality of his current prolonged detention while the removal process is effectuated against him.

Given the nature and substance of the Petitioner's attack, neither § 1252(a)(2)(A) or § 1252(e) deny the Court of its jurisdiction to entertain the petition. *See*, *e.g.*, *Noori v. LaRose*, -- F. Supp. 3d --, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *7-*8 (S.D. Cal. Oct. 1, 2025).

**B. Section 1252(g)**

Though not limited to the expedited removal process, section 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.

Respondents argue that the § 1252(g) bar applies because Petitioner's claims because "Petitioner's primary request within his petition is to have this Court review DHS's determination of his inadmissibility." ECF No. 5, at 6. However, this is a mischaracterization of Petitioner's pleading. Petitioner does not ask the Court to review DHS's determination of his admissibility or its decision to execute a removal order against him. Rather, Petitioner challenges the legality of his present detainment, specifically objecting to the and the prolonged length of detention without a hearing. ECF No. 1, ¶ 23; ECF No. 6, at 2.

Detainment of Petitioner does not fall within the three discrete actions identified in § 1252(g). Thus, § 1252(g) does not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

In sum, the Court finds that § 1252 does not strip this Court of jurisdiction to consider the petition now before it.

**II.     Merits**

Petitioner claims that the prolonged nature of his detention—eight months—violates the Fifth Amendment's Due Process Clause and the INA. ECF No. 1, ¶¶ 22-25. Respondents counter that Petitioner is not entitled to raise a due process claim. *See generally* ECF No. 5.

**A. Entitlement to Due Process Claim**

The parties do not dispute that Petitioner is detained under § 1225(b)(1). *See* ECF No. 1, ¶¶ 1, 23; ECF No. 5, at 2. However, Petitioner argues that his detention has become unconstitutionally prolonged. ECF No. 1, ¶ 1. Respondents contend, relying on *Dep't of Homeland Sec. v Thuraissigiam*, that inadmissible arriving noncitizens have no due process rights other than those afforded by statute. ECF No. 5, at 7.

In *Dep't of Homeland Sec. v. Thuraissigiam*, the respondent was a noncitizen who was detained shortly after his unlawful entry while still close to the border. 591 U.S. 103, 140 (2020). Keeping those characteristics in mind, the Supreme Court held that those "in respondent's position ha[ve] only those rights regarding admission that Congress has provided by statute." *Id*.

After the decision, district courts have taken two different approaches. In one blanket approach, district courts have dismissed or denied habeas petitions from those

1  in Petitioner's position when they challenge detention on due process grounds. *See, e.g.*,
2  *Petgrave v. Aleman, 529 F. Supp. 3d 665*, 669 (S.D. Tex. 2021) ("As far as Petitioner
3  is concerned, whatever procedure Congress has authorized is sufficient due process.");
4  *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y. 2021) ("Petitioner is
5  on the threshold of initial entry into the United States and [ ] he accordingly is not
6  entitled to procedural protections beyond those provided by statute."); *Zelaya-Gonzalez*
7  *v. Matuszewski*, No. 23-CV-151-JLS-KSC, 2023 WL 3103811, at *4 (S.D. Cal. Apr.
8  25, 2023) ("Binding Ninth Circuit and Supreme Court precedents are clear that
9  Petitioner lacks any rights beyond those conferred by statute, and no statute entitles
10 Petitioner to a bond hearing."); *Mendoza-Linares v. Garland*, No. 21-CV-1169-BEN-
11 AHG, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) (same).

12 However, most courts have opted for an alternative, as-applied approach.
13 Specifically, while facial challenges to mandatory detention have been rejected, *see*
14 *Demore v. Kim,* 538 U.S. 510, 530-31 (2003), nothing has been said "about whether
15 due process may *eventually* require a hearing." *Black v. Decker*, 103 F.4th 133, 149 (2d
16 Cir. 2024) (emphasis in original). This is also true for *Thuraissigiam*. Though
17 *Thuraissigiam* limits an arriving noncitizen's due process rights regarding admission,
18 the court did not address the issue of prolonged detention. *See Padilla v. U.S. Immigr.*
19 *& Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("*Thuraissigiam*'s
20 discussion of due process is necessarily constrained to challenges to admissibility to the
21 United States. This was the sole claim presented and the respondent expressly asked for
22 a chance to reapply for asylum and admission.").

23 Additionally, "the Supreme Court has . . . explicitly stated that as-applied
24 constitutional challenges to 8 U.S.C. § 1226(c)[, which cover mandatory detention
25 under that statute,] are not foreclosed." *Abdul-Samed v. Warden of Golden State Annex*
26 *Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *5 (E.D. Cal. July
27 25, 2025). While the Ninth Circuit has not spoken on whether due process requires a
28 bond hearing for noncitizens mandatorily detained, the First, Second, and Third Circuits

1  have held that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted); *see Black*, 103 F.4th at 138; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209-10 (3d Cir. 2020). Though § 1225(b) was not specifically addressed by the Supreme Court or the three Circuit courts, § 1225(b) contains similar mandatory detention provisions to § 1226(c). Thus, the reasoning underlying this as-applied approach would seemingly transfer to § 1225(b).

Given this background, a majority of district courts have found prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues. *See, e.g.*, *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b)…'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (collecting cases); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under

§ 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.").

This Court agrees with the majority. While *Thuraissigiam* limits an arriving noncitizen's due process rights regarding admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing.

**B. Violation of Due Process**

To determine whether a petitioner's detention has been unreasonably prolonged, the Court applies the *Banda v. McAleenan*'s six-factor analysis as a framework, which weighs: (1) total length of detention to date; (2) likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019). *See also Sadeqi v. LaRose*, -- F. Supp. 3d --, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (applying the *Banda* factor analysis to a prolonged detention claim).

**1. Total Length of Detention to Date.**

Petitioner has been detained for just over eight months. Petitioner argues that this detention is unreasonably prolonged. ECF No. 1, ¶ 1.

While eight months of detention does not presumptively establish unreasonably prolonged detention, eight months is also not so little time as to preclude constitutional scrutiny. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) ("The Court agrees with Respondents that the length of Petitioner's detention to date—almost 12 months—does not by itself, without more, establish prolonged detention in violation of due process. But neither does that length of detention serve as a safe harbor or insulate Petitioner's case from constitutional review."). Additionally, courts have previously found that similar lengths of detention were unreasonable. *See, e.g.*, *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) ("The Court finds that Petitioner's detention

for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner).

Thus, this factor weighs in favor of Petitioner, though it is not determinative.

### 2. Likely Duration of Future Detention.

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Here, the length of future detention is unclear. Petitioner asserts only that the Government has been either "unable or unwilling" to remove Petitioner. ECF No. 1, ¶ 1. Respondents offer no estimate of a timeline, stating only that they requested a travel document for Petitioner on December 27, 2025, and that they will be able to "effectuate" Petitioner's removal "promptly" once they receive such a document. ECF No. 5-1, ¶¶ 10-11. Respondents do not state why they waited more than six months after detaining and issuing an expedited removal order against Petitioner to request a travel document.

"While the Court cannot definitively determine the duration of petitioner's future detention," given the pace of proceedings against Petitioner thus far, "it appears likely petitioner will face many more months . . . in detention," especially if there is a petition for review before the Court of Appeals. *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *9 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Guatam v. Corr. Corp. of Am.*, No.

3:25-CV-3600-JES-DEB, 2026 WL 25846, at *5 (S.D. Cal. Jan. 5, 2026) ("[A] removal order may not become final until after the appeals Petitioner could file, to both the Board of Immigration Appeals and Ninth Circuit . . . These appeals can take a long time."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) ("Although the Court recognizes that future events are difficult to predict, the Court nevertheless finds that in the event Petitioner's applications for relief from removal are denied, Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner.").

Thus, the Court finds this factor falls in favor of Petitioner.

### 3. Conditions of Detention.

For the third factor, "[t]he more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at the Otay Mesa Detention Center are "indistinguishable from penal confinement." *See Kydyrali v. Wolf,* 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025). Thus, this factor weighs in favor of Petitioner.

### 4. Delays in Removal.

The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the government. In terms of the fourth factor, neither party has indicated Petitioner caused any undue delays. Accordingly, this factor is neutral.

As to the fifth factor, the only evidence before the Court is that Respondents waited over six months after detaining Petitioner and issuing an expedited removal order against him to request travel documentation to effectuate Petitioner's removal. ECF No. 5-1, ¶ 10. There is otherwise no indication in any of the filings that Respondents caused any delay in the proceedings. Thus, the Court finds that the fifth factor is also neutral or, at most, weighs slightly in favor of Petitioner.

-10-
25-cv-3730-GPC-DEB

### 5. Likelihood of Final Removal Order.

For the sixth *Banda* factor, the Court evaluates the likelihood that the removal proceedings will result in a final order of removal, or "[i]n other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. 3d at 1120. Here, Petitioner has been given a negative credible fear determination, which was affirmed by an immigration judge. ECF No. 1, ¶ 1; ECF No. 5-1, ¶ 7. Petitioner does not appear to raise any other defenses to removal. Thus, the Court finds this factor weighs in favor of Respondents.

### 6. Weighing the Factors.

In sum, at least three of the six factors weigh in favor Petitioner, one weighs in favor of Respondents, and the others are neutral. Accordingly, the Court concludes that Petitioner's detention has become unreasonably prolonged. Thus, Petitioner is entitled to a prompt and individualized bond hearing, where Respondents must justify Petitioner's continued detention "by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *9 (E.D. Cal. July 25, 2025); *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *6 (W.D. Wash. Dec. 5, 2025).[1]

### CONCLUSION

Based on the reasoning above, the Court **GRANTS IN PART** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

In his petition, Petitioner requests release, or in the alternative, a bond hearing before an immigration judge. ECF No. 1, at 7. "The Court finds, consistent with other

---

[1] Having reached this conclusion on Petitioner's due process claim, the Court declines to decide the merits of Petitioner's INA claim.

post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022); *Abdul-Samed*, 2025 WL 2099343, at *9. If Respondents fail to comply with this order, Petitioner may seek further relief from the Court at that time.

Accordingly, the Court **ORDERS** Respondents to provide Petitioner with a bond hearing within seven (7) days of this Order.[2] Respondents are **ORDERED** to **FILE** a Notice of Compliance within ten days of providing Petitioner with a bond hearing. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  January 9, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. ECF No. 1, at 7. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.